Case number 20-5120. Eric L. Lewis, Abelants v. United States Department of the Treasury and Financial Crimes Enforcement Network. Mr. Gordon for the Abelants, Ms. Chung for the Appellees. Good morning, counsel. Mr. Gordon, please proceed when you're ready. Good morning and thank you. May it please the court. We are here today because FinCEN mistakenly believes that its commitments to various foreign government agencies supersede its FOIA obligations. And that mistaken belief infected every aspect of its response to Lewis's FOIA request. It explains why FinCEN has improperly asserted exemption five claims over, for example, minutes of meetings with its foreign counterparts when the law is clear that those minutes would be factual in nature and not privileged. It casts further doubt upon FinCEN's claim under exemption 7A that its production of any withheld information could reasonably be expected to interfere with unidentified foreign proceedings. And it certainly calls into question the credibility of FinCEN's 11th hour claim under exemption 7D that withheld documents in full solely to protect the identities of confidential informants. And along a similar line, its misunderstanding of its FOIA obligations is sufficient to rebut any presumption that it conducted a proper segregability review. Indeed, this court recognized in the criminal defense lawyer's case in 844F3 at 256, as well as in Meade 566F2 at 260, that when an agency believes it's entitled to withhold a document in full, and that belief is based upon a misinterpretation of FOIA, a new segregability review is required based upon a proper understanding of its obligations. And that is the situation we have here. With FinCEN's burden on summary judgment to demonstrate that there were no material facts in dispute and no contradictory evidence in the record, FinCEN did not meet that burden with respect to any of its claimed exemptions. Just to illustrate how the various exemptions have been applied improperly, I would refer the court to the Vaughn Index entries with respect to group 40, which is at the joint appendix at page 264. And group 40 is described as an email and briefing paper that was sent to a Department of Justice official. And FinCEN claimed Exemption 5, 7A, and 7D over this document. With respect to Exemption 5, all it tells us is that the exemption is applicable because the background material discusses ongoing and future agency action related to BPA. Well, there's no evidence in the Vaughn Index that the record is either or decision-making process to which it may have contributed. We have no idea why it was sent or prepared and sent to a Justice Department official. And there's certainly no basis for determining whether any non-exempt information such as factual material can or cannot reasonably be segregated. We don't know if the memo has a fact section and then a recommendation section or what. There's simply not enough evidence in the Vaughn Index to justify the Exemption 5 claim. And then when we move on to Exemption 7A, the index states that FinCEN applied a categorical approach and concluded that the records contain or reference material that would fall within a category described as the exchange of information with foreign government agencies, which it tells us is exempt for the reasons stated in the Al-Hindi Declaration. So my first observation is that the index doesn't even say that the records, and this is a quote, concern issues related to pending proceedings involving BPA. And I quote that because that's a boilerplate description that FinCEN used in 17 other groups of records in the Vaughn Index. And we identify those at page 27 of our opening brief. And it seems to me that the absence of that kind of boilerplate description is indicative that, you know, these records do not concern issues related to pending proceedings. Secondly, all the Al-Hindi Declaration tells us is that the documents relate to BPA and that there are ongoing investigations or proceedings concerning BPA. But cases such as Crewe, this court's Crewe decision and North v. Walsh make clear that it's not sufficient basis, that that is not a sufficient basis for the court to conclude that the circumstances characteristically support an inference that disclosure would interfere with a pending enforcement proceeding because the threshold issue before you can get to a categorical approach is some showing that the information in the documents is even relevant to the ongoing proceeding. And so, for example, in Crewe, it was a wide-ranging, multifaceted investigation arising out of the Abramoff scandal. And then you had a request for documents concerning time delay. And the government said, well, wait, there are ongoing investigations. And this court said, well, you first have to show us that the documents concerning delay are even relevant to any ongoing investigations. And the approach that Finson has taken here doesn't do that because all they say is that... Did the declaration not say that there's ongoing investigations? It says there are ongoing investigations, but it provides no description of them. And all it says is that they relate to BPA. Well, what issues, what types of investigations, what information is in the documents that is relevant to whatever ongoing investigation there may be? Because if you go back to, for example, the rulemaking proceeding, they would talk about all different types of wrongdoing in different parts of the world and so on. And there has to be some linkage that the information in these documents is relevant to whatever ongoing proceedings. The ongoing proceeding could be an investigation into whether BPA paid its taxes. Well, maybe the information in this, maybe the withheld information is relevant to that. Maybe it's not. There's no underlying showing of relevance when they refuse to provide any information about the proceedings or about the documents. It's essentially two black boxes. And you have one box as the documents, one box has some unidentified proceedings. We can't see into the boxes. The court can't see into the boxes. And there's no way of evaluating the actual degree of overlap to use the court's words that would justify the categorical approach that FinCEN is applying to. Yes, the release of evidentiary material could interfere with a future proceeding if it's relevant to that proceeding. If it's not, all of their explanations about how release of evidentiary would interfere with the proceeding is hypothetical. Or it's abstract because there's no linkage between the withheld information and the proceeding. And it's an especially acute issue here because in the typical case that was discussed in CRU for example, the agency is actually the same agency that's conducting the investigation. And here, there's no indication that FinCEN even has sufficient knowledge about the specifics of these investigations to be able to reasonably conclude or enable this court to conclude that yeah, the release of this unidentified information would interfere with those proceedings. And I think that the proof of that is that El-Hindi identifies four documents out of hundreds that he says FinCEN has specifically discussed, four documents with the foreign officials or whoever's involved in the proceedings. And they've told us that yes, release of those four documents would have an impact. There's no similar representation even with respect to the other 200 documents or so that are being withheld under 7A. And we could move on to the Exemption 7D claim on this record where FinCEN says the document contains information from and about confidential informants who have expressly requested confidential treatment of their information. Well, that's not a basis for withholding under 7D. FinCEN is only allowed to withhold information that would reveal the identity of the confidential source. And this index entry makes no such claim with respect to those records. All it says is we're withholding it because the sources requested us to treat the information as confidential. And in its opening brief below, and this is at docket 36-1, page 26, FinCEN cited Dow Jones, 917 F. Second, 571, for the proposition that as long as it can demonstrate that the information was provided in confidence, then both the identity of the source and the information he or she provided will be immune from disclosure. And then in opposition, Lewis pointed out that FinCEN was misreading Dow Jones because Dow Jones was a case involving the second prong of the exemption, not the first prong under which FinCEN was proceeding. And it was only in its reply that FinCEN then said, oh, we're also withholding information because it could reveal the identity of the confidential source. Now, even on that issue, it says that information is often singular in nature. That's why it would reveal the source. But it doesn't say it's always singular in nature. And there's no indication that the information that's reflected in this briefing paper is information that is singular in nature. And to the extent it's not, we're entitled to it, unless some other exemption applies. And in the same, this was just an illustration, the same issues arise throughout the Vaughan Index. If you look at, for example, category 31 at page JA254, it's a series of emails from 2010 between FinCEN officials. Now, it may be that, for example, for 7A purposes, the emails do contain information, which if disclosed could be expected to interfere with ongoing proceedings that are pending now. But that inference seems especially attenuated when you're talking about emails from 10 or 11 years ago. I would suggest that the court should require FinCEN to go back, re-review all of the withheld records with a correct understanding of its FOIA obligations, redo its segregability analysis based on proper factors, prepare a revised Vaughan Index, setting forth a proper basis for any information that continues to withhold. The court has no questions. I'll reserve my time. Thank you, Mr. Gordon. Ms. Chung, we'll hear from you now. Good morning, and may it please the court. Ashley Chung for the government. Plaintiff raises many issues in this case, but this court does not need to reach all of them in order to resolve the appeal. If we put aside segregability for a moment, if the court concludes that either Exemption A or Exemption D was properly invoked in this case, the court does not need to reach any other issue. Plaintiff does not challenge other bases for withholding, such as Exemption 7E or the attorney-client privilege under Exemption 5. And these protections, together with either Exemption 7A or 7D, cover all of the documents at issue in this case, except for one record, which plaintiff addresses in footnote 5 of his opening brief. FinCEN's statutory mandate is to support law enforcement efforts to combat money laundering, terrorist financing, and other financial crimes. And in support of this law enforcement mission, FinCEN frequently exchanges sensitive, confidential communications with its foreign and domestic partners and other confidential sources. I'm happy to answer any questions. On the 7D question, you don't take issue with the proposition that to fall within 7D, it's not enough that there was a promise of confidentiality. The source actually has to be a confidential source, right? Yes, that's correct, Your Honor. How do you piece together that the government is making the argument in response to the challenge to the 7D assertion that the source was confidential, as opposed to there having been just a promise of confidentiality? The government's declarations explain that the confidential sources provide information to FinCEN under assurances of confidentiality. So that makes them a confidential source. And plaintiff doesn't challenge whether or not these sources qualify as confidential sources. I don't think that's an argument that's really preserved in this case. And FinCEN's declarations explain that because the information that was provided by these sources is so closely tied to their identities, that revealing even the information they provided would reasonably be expected to reveal the identities of the sources. And where in the declaration is that? Because I thought they are challenging that. At least they're doing it on appeal. I know you have an argument that there's a forfeiture from what and we're focusing on the arguments that are made on appeal. Where in the declarations is that? Sure. So if you start on page 178 of the joint appendix, this is where FinCEN starts to talk about exemption 7D. And then more specifically, it talks about the appendix. And just to give more specificity, the Egmont Group is a group of financial intelligence units who joined together for law enforcement efforts to combat international money laundering. And they only agree to provide information to each other subject to an explicit agreement of confidentiality in the Egmont Charter. And then on page 183 of the joint appendix, the declaration explains that even outside of the Egmont Charter, there are other explicit express agreements of confidentiality. And then finally, on page 185 of the joint appendix, this talks about implied confidentiality. Right. I guess some of that at least has to do with the promise of confidentiality, which I take the point. Of course, there's going to be government investigation programs in which it's important to have a promise of confidentiality in order to encourage partnership and sufficient collaboration. But the statute speaks in terms of revealing a confidential source, not promises of confidentiality, right? And the part of the declaration that draws that 178, 179, or where are you? Where are you getting that part of it that it would reveal the confidential source? I understand your question. So page 189 of the joint appendix, when it talks about the scope of withholdings, and particularly in paragraph 60 of this page of the joint appendix, it explains that, you know, often the confidential sources here are foreign financial intelligence units. And it says that the information exchanged is so closely tied to these foreign jurisdictions and their sources that revealing even the substance of the information exchanged would reveal the identities of the sources. So for example, in a more typical case, if the confidential source is like an individual providing information, let's say to the FBI, if the information is something like, you know, there are illegal drugs in X house, that kind of information is not so closely tied to the source, like it could have been a number of individuals who said that. But here in this, you know, fairly unique situation, where the confidential source is often a foreign agency or a foreign law enforcement authority, and they provide information that's you know, this particular financial institution in this particular country had these suspicious transactions, that information about, you know, where that foreign institution is, what country it's in, those provide very clear clues to what foreign intelligence unit is providing this information. Counsel, do you have more that you want to say about other issues or? No, if this court has no further questions, we'd ask the court to affirm. Let me make sure my colleagues don't have any further questions for you. Nothing. Okay, thank you, Miss Chong, Mr. Gordon. I'm sorry to be late about this, but sure to ask counsel for the government. Appellant makes a number of statements regarding he understands that it may well be true that viewed globally, there is an exemption entitling the government not to release a document. But there may be documents within a group that are not of that kind. And the government hasn't indicated that there are not such documents. What is your response to that? Sure, so I would point the court to page 172 of the joint appendix. So this is a discussion of exemption 7A. Right. The operation makes clear that the specific records in this case are related to the particular ongoing law enforcement proceedings. So we're not just saying that, you know, FinCEN should get this blanket degree of confidentiality for all of its documents. We're tying very specifically here, these documents to this ongoing law enforcement investigation. And the declaration says that foreign authorities have confirmed to FinCEN that these foreign investigations and proceedings are still pending into the facts underlying the So 172, which paragraph? That's J172, it's paragraph 20. So the way you read that, it carries over to 172. Yeah, so the way you read that there is no room for the circumstance that all of the documents at issue are related to the particular ongoing proceeding. And FinCEN, in its expert judgment, has said that release of these documents would interfere with that ongoing proceeding, then there isn't a room for release of those documents.  The court attaches to the declarations by the government. We would not find the district courts, or would we, refusal to conduct an in-camera inspection and abuse of discretion. I'm trying to understand, and it must be that in those other cases, there simply wasn't this kind of assertion by the government. That's what I'm trying to be clear about. As it as a J172, paragraph 20. Your Honor, where the government has submitted sworn declarations explaining that there is an ongoing law enforcement investigation or proceeding, and that the documents at issue are related to that specific ongoing law enforcement investigation or proceeding, and disclosure would interfere with it, the court provides a presumption of good faith to the harm that would occur. And this court has also said that the decision about whether to conduct in-camera review is left to the broad discretion of the district court. And here I think the district court explained its reasonings for not doing in-camera review, and there's no reason to doubt the district court. So where we have remanded for further explanation by the agency, et cetera, there must apparently have not been this type of statement. That's all I'm trying to understand, because counsel cites the cases where we have expressed some concern and we send it back for further articulation by the agency, not second-guessing the agency, but just saying we can't tell from the generality of the statements in the declarations whether or not, in fact, these particular exemptions are properly invoked. And your argument is here, just the paragraph 20 statement does that. Yes, Your Honor. I think paragraph 20 statement does that, and just to provide a little bit more detail. So paragraph 20 says that the ongoing investigations relate to the Section 311 rulemaking and BPA. And then if you look at the public notices about the Section 311 rulemaking, this provides additional fact. So they explain that high-level managers at BPA assisted third party money launderers who were involved in organized crime, corruption, smuggling, and fraud. So there's no case law that says we have to provide any further details about these courts. In fact, this court in Boyd rejected basically this argument. That's an important point, isn't it? That it's not just paragraph 20, but it's looking at the record that is available. And we have this rulemaking. So that paragraph 20 has to be understood in that context. Yes, that's correct, Your Honor. Thank you. And I was going to explain that in Boyd. Yeah. The government made this same kind of description. It described the investigation as relating to targets who are individuals in some degree connected to or related by Boyd, who is the plaintiff in that case who had been convicted on gun and drug charges. So I think here we're providing about these investigations. And I would emphasize that Exemption 7A is intended to protect the integrity of the investigations and that the government is not required to provide specific details about who the targets are and who's being investigated, as that could interfere with the investigations. If this court has no further questions, we would ask the court to affirm. Thank you. Thank you, Ms. Chong. Mr. Gordon, I think you had two minutes left for rebuttal. Thank you, Your Honor. Just to address Judge Rogers' point with respect to paragraph 20, the JA 172, that is the type of broad description, facts underlying the 311 rulemaking, persons related to BPA, we're told high-level managers, money launderers. That's the type of multifaceted investigation that this court addressed in Crew, not in Boyd. Boyd was what proceeding, and you have the agency that's conducting the proceeding. That's not what's going on here. If you go look at the 311 rulemaking and then see how many different aspects there are to it and different people involved, I think the logical question would be to ask, okay, now tell me about the ongoing proceedings so we can see whether there's really any overlap. And that's the piece that's missing. So let me turn also then to the 7D issue. We were looking at the joint appendix, and I would ask the court to look at paragraph 34, for example, where Ms. Elhindy says that information provided by confidential sources is often singular in nature. Not always. It would often could reveal their identities. So the issue here isn't whether the sources are confidential. The issue is whether it's sufficient that they ask for the confidential treatment of their information, even if the information would not reveal their identity. And that is what confidentiality supersede its FOIA obligations, and it is only entitled to withhold the information if it would reveal the identity of the source. Unless the court has any questions, I believe my time is up, so I will yield. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Rogers, Edwards